J. J. THOMAS, Appellee, v. FRANK WILLIAMS, Appellant, et al., Appellees.

CONTRACTS: Certainty—''Equal Share.'' Contract relative to
1   the sale of land by parents to a son construed, and held that a clause, "after our day each one gets equal share," referred to *all* grantor's children, and not to three children only.

CONTRACTS: Consideration. An agreement by a vendee to pay
2   an existing mortgage on the land, "as part of the consideration," very definitely points to the conclusion that payment of such mortgage works a payment *pro tanto* of the purchase price.

CONTRACTS: Understanding of Parties. What the direct bene-
3   ficiaries of an ambiguous contract understood it to mean is persuasive on the issue of construction.

*Appeal from Montgomery District Court.—J. B. Rockafel-low, Judge.*

April 6, 1920.

Originally, this was an action of partition. Later, it became, in fact, an action to construe a contract, and to determine the ultimate rights of the parties thereunder. The decree construed the contract in accord with plaintiff's contention, and the defendants have appealed.—*Reversed.*

*Paul W. Richards,* for appellant.

*W. C. Ratcliff* and *George W. Thomas,* for appellee.

Evans, J.—The controversy, in its final form, involves the distribution of the proceeds of the sale of a farm of 160 acres. David J. Williams, the owner of the farm, and
Sarah, his wife, executed a contract of sale

1. Contracts: certainty: "equal share." of said farm to their son, Frank Williams. Provision was made therein for annual pay-ments to be made to the grantor and wife

during their lives, and for a distribution of the purchase price thereafter. The proposed contract, as first drafted, was materially changed by interlineation and erasures. which rendered the contract, as executed, ambiguous, at least, in some respects, if not quite uncertain. The follow-ing is a photographic copy of the contract, as executed:

The contract was executed sometime in 1908. The children of David Williams and wife consisted of three daughters and one son, as follows: Anna (Mrs. Edwards); Minnie (Mrs. Davis), Alice (Mrs. Thomas), and Frank. The fact of the execution of the contract was known to all members of the family, and never complained of by any. Frank was in possession of the farm, as a renter, at the

time of the execution of the contract, and for some time before. He went into possession thereof, pursuant to the contract, January 1, 1909. David died in December, 1910. His wife, Sarah, survived him and still survives, and is a party herein. Sometime after the execution of the contract, a judgment was entered against David J. Williams in Mills County for approximately $3,500. In 1911, a transcript of this judgment was filed in Montgomery County, where the farm in question is located. Though the contract recites that a warranty deed has been executed and deposited for the purpose of delivery to Frank, upon his performance of the conditions of the contract, yet none was, in fact, executed during the lifetime of David. After his death, however, the three sisters and the mother all executed deeds to Frank, in recognition of the contract and in purported performance thereof. The only consideration exacted for such deeds was the future performance of the contract by Frank according to the terms thereof. In 1913, Alice (Mrs. Thomas) died, leaving her husband surviving, and two minor children. Her surviving husband is plaintiff herein. The defendant Frank Williams paid the $3,500 judgment. His right to contribution therefor to the extent of one fourth thereof from each of his sisters is not disputed. The disputed contention of plaintiff is stated as follows:

"(1) The $5,000 mortgage was not to be deducted from the purchase price of $14,400, which is $90 per acre for 160 acres, but was assumed by the appellant, and to be paid by him in excess of the purchase price of $90 per acre.

"(2) The three daughters only, and not the four children, were to share in the $90 per acre."

These propositions are both resisted by the defendant Frank Williams, his contention being:

(1) That $90 per acre was the full amount of the purchase price agreed on as a consideration; that he assumed the $5,000 mortgage "as part of consideration;" that the

payment of such mortgage amounted to a payment *pro tanto* of the agreed price.

(2) That the clause of the written interlineation, "after our day each one gets equal share," relates to the distribution of the remaining proceeds of the purchase price among the children of the grantors; and that the words "each one" refer to the four children, and not to three.

The decree of the trial court sustained both of the propositions contended for by plaintiff. We turn, therefore, to a construction of the contract. It is made to appear that, prior to the execution of the contract, someone had drafted a typewritten form for them. This proved to be unsatisfactory, in that it did not express the purpose or wish of the grantors. They undertook, however, to utilize such drafted form in part by making erasures thereon, and inserting a written interlineation therein. This interlineation introduced certainty into the contract in one respect and uncertainty in another. It did fix definitely the price of the land which was to be taken as the basis of computation. The words "each one," as descriptive of the beneficiaries of the distribution, involve uncertainty in their application. Whether the uncertainty is such as to render the use of the term and its clause ineffective for any purpose, or whether it should be deemed such an ambiguity as may be aided and explained by extraneous evidence, might be an interesting question to consider. The conclusion which we reach renders it unnecessary that we should make the differentiation. If the clause "each one gets equal share" is to be deemed so uncertain as to be wholly ineffective, then there is no provision in the contract for the distribution of the purchase price. It would, therefore, fall into the estate of the intestate decedent. The four children, as the only heirs, would become equal beneficiaries thereof. On the other hand, if such clause, in the light of the surrounding circumstances attending the contract,

presents such ambiguity as opens the door to extraneous evidence, then the same result must be reached. As will be noted later, the extraneous evidence introduced shows that the words "each one" had reference to all the heirs of the grantors, being their four children.

As an aid to the construction of the contract as executed, we may look first to the drafted typewritten form, as originally drawn. We note first that it omitted to state the purchase price. It furnished, therefore, no basis of computation for the purpose of a division. It did fix specific amounts to be paid to each of the three sisters. Assuming that the actual value of the land was $90 per acre, as the undisputed evidence in this record shows it to have been, then the practical result of the contract, if it had been executed in the drafted form, would have been to require Frank to pay to his sisters $7,500, and no more, and to permit him to retain for himself a balance of $1,900 over and above the $5,000 mortgage. Treating such proceeds of the sale as the total estate of the decedent, Frank would be a beneficiary in such estate to the extent of $1,900; whereas one of his sisters would receive $1,500, and the other two would receive $3,000 each. This is the basis of the contention of appellant that the intent of the grantors by the interlineation was to make all their children equal beneficiaries in their estate. The argument for appellee is that the words "each one" should be construed as referring to the three daughters, because their names still remain in the contract, unerased. And yet, they are completely detached from all that precedes and from all that follows. The erasure began with the words, "persons the amounts," and ended with the words, "Three Thousand Dollars." There is a line drawn partially through one of the names. They are also included in parentheses. Whether this was for the purpose of cutting them out or of keeping them in is a matter of mere surmise. They form no part

of any sentence or statement in the contract, as executed. They are disconnected from any predicate, and are themselves neither subject nor object of any verb. If the words "each one" should be construed to refer to persons whose names appear in some form in the contract, the fact remains that the names of the four children appear therein. The contract, however, does not disclose that the persons so named are the children of the grantors. This fact is made to appear only by extraneous evidence. In the final form of the contract, as executed, we observe no reason for saying that the words "each one" should refer to three of the children, rather than to four.

On the question whether Frank assumed the $5,000 mortgage, in addition to the contract price, the language of the contract is definite and certain. He assumed the same "as part of consideration above stated." The only consideration above stated is the written interlineation: "Frank Williams is to have the land at $90.00 an acre."

2. CONTRACTS: consideration.

The construction of the contract here foreshadowed is strongly sustained by the extraneous evidence introduced. The widow, Sarah, and the daughters, Anna and Minnie, were made parties defendant. They appeared in person, but filed no pleading. Each of them was examined as a witness on behalf of the defendant Frank. They had all understood the contract in accordance with the construction contended for by Frank. It was Mrs. Williams who made the erasures and the interlineation in the contract. She testified that "each one" in such interlineation referred to the four children. She testified, also, that the actual value of the land was $90 an acre, and that such was the price at which her husband was holding it before it was offered to Frank. This testimony as to actual value is not disputed. Minnie testified as follows:

3. CONTRACTS: understanding of parties.

"I first saw the agreement today, but my mother has told me about it, before my father's death. She told me they had sold the farm at $90 an acre to Frank, and it was equally divided among the four of us. * * * It was my understanding that I should receive what would be due me under the contract, Exhibit 2, after taking out the mortgage and the judgment that had been paid. The judgment and mortgage should be deducted, and then the balance distributed at $90 per acre according to contract, Exhibit 2."

The foregoing was, in substance, the understanding of the entire family, including Alice, who later died.

Upon the whole record, we readily reach the following conclusion:

1. That $90 per acre was the actual value of the land, and was the full consideration contracted for.

2. That the $5,000 mortgage was assumed as a part of such consideration.

3. That the remainder of the proceeds constituted what would have been the estate of decedent.

4. That such proceeds were necessarily subject to the $3,500 judgment against the decedent.

5. That the true intent of the contract was to distribute the net proceeds of the estate, after the death of the surviving grantor, to the four children, as all the heirs of the grantor.

Decree will be ordered accordingly, and the decree entered below will be—*Reversed.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.